69 So.2d 445

### LINDSEY v. ROGERS.

1 Div. 530.

Supreme Court of Alabama.

Nov. 5, 1953.

Rehearing Denied Jan. 21, 1954.

C. LeNoir Thompson, Bay Minette, and Walter J. Knabe, Montgomery, for appellee.

J. B. Blackburn, Bay Minette, for appellants.

STAKELY, Justice.

The original bill was filed by Claude M. Rogers (appellee) against Walter M. Lindsey (appellant) and W. R. Thompson to enforce a materialman's lien. The original bill was amended a number of times so that when the case was tried, it sought to establish a statutory lien for an amount alleged by the complainant Rogers to be due for materials furnished by Rogers to Lindsey under a contract with and on the credit of Lindsey and used in the construction of a house on a lot of land owned by Lindsey in Baldwin County, Alabama. There was a decree in favor of Rogers for the amount of the materials supplied by him, secured by a lien on the property of Lindsey. The appeal here is from the foregoing decree.

Assignment I. Demurrers were filed separately by Thompson and Lindsey.

The demurrer of Thompson was sustained by the court and the cause dismissed as to him. Thereafter the bill was only against Lindsey. It is insisted that Thompson, as the contractor for the construction of the house, was a necessary party and that this ruling constitutes prejudicial error to the appellant, the owner of the land. Sections 56–57, Title 33, Code of 1940, are cited in support of this position. The contention is not correct. These statutes relate to situations where money due the contractor on the contract has been withheld or where the contractor is required to reimburse the owner when the owner has settled with the contractor. Sanitary Plumbing Co. v. Simpson, 200 Ala. 590, 76 So. 948; Wood Lumber Co. v. Greathouse, 226 Ala. 644, 148 So. 125; Emanuel v. Underwood Coal & Supply Co., 244 Ala. 436, 14 So.2d 151. If the suit concerns money in which the contractor is interested, the contractor obviously is a necessary party. In the case at bar, however, there is no effort to collect out of any funds owing to the contractor on the contract or which have been paid the contractor. The suit is a claim against the owner on the basis that the materials were furnished the owner solely on the credit of the owner and the prayer is for a lien on the land to the full extent of the claim. Since the statutes do not apply and the liability, if any, is several, Lindsey cannot complain of the dismissal as to Thompson. City of Birmingham v. Corr, 229 Ala. 321, 157 So. 56.

■ Assignment II. This assignment of error goes to the action of the court in overruling the appellant's motion to strike the amended bill of complaint. The demurrer of the respondent Lindsey to the bill of complaint was sustained by the court on July 25, 1951. In the decree the court allowed twenty days within which the bill might be amended. The bill was amended on August 16, 1951. The basis of the motion is that the bill was not amended within twenty days from July 25, 1951. There is no merit in this insistence. Ordinarily the matter of a dismissal rests in the court's discretion. Brown v. Hawkins, 239 Ala. 291, 194 So. 885; 30 C.J.S., Equity, § 569, page 960. We certainly are not willing to say that the court abused its discretion in failing to dismiss on the ground on which the motion is based. The case of Underwood v. Underwood, 162 Ala. 553, 50 So. 305, cited by the appellant, is not in point. In that case the complainant stood by and declined to amend his bill. Here the bill was amended.

■ Assignment III. The demurrer of the appellant, among other things, takes the position that the lien claims attached to and made a part of the bill of complaint do not show to whom the materials referred to were furnished. It is argued that a person claiming a lien should be required to state in the form filed by him under the provisions of § 41, Title 33, Code of 1940, to whom the materials were furnished. It may be noted in this connection that the bill specifically alleges that the complainant furnished the goods to Walter M. Lindsey at the request of Walter M. Lindsey. The affidavit in connection with the account states in part,

"The attached account is an itemized statement of lumber, building materials, custom cabinet work, sold and delivered by the said Claude M. Rogers to Walter M. Lindsey at his building site, Lot One, Block 18, Hand Land Company Addition to the Town of Bay Minette, and that the said Claude M. Rogers has knowledge of the sale and deliver[y] of the items listed in the attached itemized statement. * * *"

However the matter under consideration is governed by § 41, Title 33, Code of 1940, which provides that the lien shall contain (1) the amount of the demand, (2) a description of the property and (3) the name of the owner or proprietor. The lien claim in the case at bar states the amount of the demand is $3,769.03 with interest from the 10th day of December, "for material furnished." It gives a legal description of the property. It names Walter M. Lindsey as the owner of the property. The lien claim as filed meets all the requirements of the foregoing

statute. There was accordingly no error in this ruling of the court.

 Assignment IV. The court rendered a final decree to the effect that Lindsey is indebted to Rogers in the sum of $3,079.77 and further provided that Rogers has a lien on the land of Lindsey to secure payment of this amount. This brings us to the real question before the court on this appeal and that is whether the materials for which this suit is brought were sold directly by Rogers to Lindsey, so that Lindsey became personally responsible therefor. It must be kept in mind that a materialman's lien is a statutory creation and is not "allowable in equity independently of statute". Emanuel v. Underwood Coal & Supply Co., supra [244 Ala. 436, 14 So.2d 154]. In other words the lien must be perfected by compliance with statutory requirements and it is an essential statutory requirement that there be a valid contract of purchase between the materialman and the owner of the property. This may arise either by virtue of a positive agreement between the materialman and the owner of the property or where the statutory notice has been given by the materialman to the owner prior to the furnishing of the materials that the materialman will look to the owner for payment for the materials. Buettner Bros. v. Good Hope Missionary Baptist Church, 245 Ala. 553, 18 So.2d 75, 76.

It is undisputed that originally Thompson and Lindsey entered into a written contract whereby Thompson was to build a residence for Lindsey for $20,050, labor and materials to be furnished by Thompson. It became increasingly apparent that Thompson's financial condition was bad. He became delinquent with his account with Rogers and Rogers refused to continue to supply materials. Lindsey was anxious for Rogers to supply materials. As a result on September 26, 1950, he called Thompson and Rogers to his office and gave a check for $3,000 to Thompson which was payable to Thompson. Thompson endorsed the check and handed it to Rogers. This left a balance of $428 and some cents. At that time Lindsey wrote and delivered a letter to Rogers as follows:

"Bay Minette, Alabama
Sept. 26, 1950.

"Mr. Claude Rogers
Rogers Building and Supply Company
Bay Minette, Alabama

"Dear Mr. Rogers:

"Confirming our conversation of this date I am forwarding a check for $3,000.00 to Mr. W. R. Thompson as an advance payment on my contract, and to enable him to pay your past due account for materials you have furnished him for use in my home.

"It is my understanding that you are to furnish Mr. Thompson other materials to enable him to finish my home, but as regards these other materials I am responsible for the costs only to the extent of any unpaid balance due Mr. Thompson under the contract.

"Yours very truly,
Walter M. Lindsey".

"WML:bb

It will be noted from the foregoing letter that Lindsey restricted liability to Rogers to the extent of the unpaid balance due Thompson under the contract. However, Rogers testified and his testimony was corroborated by Thompson that subsequently it was orally agreed between Rogers and Lindsey that materials furnished from that time on the job by Rogers would be charged directly to Lindsey and that Lindsey would be responsible for the same. Such an agreement is denied by Lindsey and the young woman who typed the letter to which we have referred, testified that Rogers was present when the foregoing letter was dictated to her. It, therefore, appears that decision in this case turns on the question as to whether or not Lindsey, the owner agreed with Rogers, the materialman, to be responsible for materials furnished after September 26, 1950, and used in the construction of the house on his property.

We are mindful of the presumption that attends findings of fact by the trial court

when the case is heard orally before the court. In this case the court held that despite the letter of September 26, 1950, on or about October 13, 1950, there was an agreement made between Rogers and Lindsey whereby Lindsey would be directly responsible for materials supplied by Rogers on the job.

But apart from the oral testimony of the witnesses to which we have referred, there is written evidence which does not appear to sustain the finding of the court. We summarize this evidence as follows.

(1). The invoice or charge ticket dated December 9, 1950, covering what is known as the McPhillips order, shows that the entire item was charged to the contractor Thompson and received by him. This is the principal item of materials furnished by Rogers. Rogers testified that he delivered the original copies of the invoice or charge ticket to Thompson because he had sold and charged the merchandise to Thompson.

(2). A number of checks dated respectively from September 29, 1950 to December 9, 1950, drawn on the Baldwin County Bank and signed by Walter M. Lindsey, were introduced in evidence. All of these checks which had notations thereon showing that they were for materials or labor used on the Lindsey job, were payable to W. R. Thompson.

(3). So far as we can ascertain from the record, there is no written entry made by Rogers showing a charge made by Rogers to Lindsey.

(4). On November 17, 1950, Rogers made a note for $1,000 payable to the Baldwin County Bank. This note was endorsed by Lindsey. Subsequently the note was not paid by Rogers and Lindsey, by reason of his endorsement, was forced to pay the note. The note was then transferred by the bank to Lindsey. The proceeds of the note were credited to the contractor Thompson according to Rogers. According to Lindsey when Rogers asked if he would advance further moneys to Thompson to apply on his account, he refused.

Rogers explained to Lindsey the dire circumstances in which Rogers was with his creditors and as a favor to Rogers, Lindsey went to the bank and endorsed the note to allow Rogers to get $1,000. It is not reasonable to think that if Lindsey had purchased or agreed to pay for all items delivered after September 26, 1950, he would have endorsed a note for Rogers on November 17, 1950, and permitted the proceeds of the note to be credited to the account of the contractor Thompson.

 In view of the foregoing written evidence we do not think that it can be reasonably said that Lindsey agreed to pay Rogers for materials delivered on the job after Sepetmber 26, 1950. We believe that the ruling of the court in holding Lindsey responsible for these items is palpably wrong.

It results that the judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.